**COLLEGE ENTRANCE EXAMINATION BOARD; Graduate Record Examinations Board; Graduate Management Admissions Council, Inc.; Test of English as a Foreign Language Policy Council; and Educational Testing Service, Plaintiffs,**

v.

**George E. PATAKI, as Governor of the State of New York; Thomas Sobol, as Commissioner of Education of the State of New York; Regents of the University of the State of New York; Martin C. Barell, as Chancellor, Board of Regents of the University of the State of New York; R. Carlos Carballada, as Vice Chancellor, Board of Regents of the University of the State of New York; Jorge L. Batista, Shirley C. Brown, Laura Bradley Chodos, Walter Cooper, Willard A. Genrich, Norma Gluck, Emlyn I. Griffith, Carl T. Hayden, Mimi Levin Lieber, Floyd S. Linton, Gerald J. Lustig, Louise P. Matteoni, J. Edward Meyer and Adelaide L. Sanford, as Members of the Board of Regents of the University of the State of New York; and Dennis C. Vacco, as Attorney General of the State of New York, Defendants.**

No. 90–CV–437.

United States District Court, N.D. New York.

July 27, 1995.

Sullivan & Cromwell, New York City, for plaintiff College Entrance Examination Bd.; James H. Carter, Lori S. Sherman, of counsel.

Wilmer, Cutler & Pickering, Washington, DC, Stanford von Mayrhauser, Gen. Counsel, Educational Testing Service, Princeton, NJ, for plaintiffs Graduate Record Examinations Bd., Test of English as a Foreign Language Policy Council, and Educational Testing Service; Thomas P. Olson, Susan P. Crawford, of counsel.

Perkins & Coie, Washington, DC, for plaintiff Graduate Management Admissions Council, Inc.; John M. Devaney, of counsel.

Nixon, Hargrave, Devans & Doyle, Rochester, NY, for plaintiffs; Harold A. Kurland, of counsel.

Dennis C. Vacco, Atty. Gen., for the State of N.Y., Albany, NY, for defendants; David B. Roberts, Asst. Atty. Gen., of counsel.

### MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

### INTRODUCTION

In a Memorandum–Decision and Order ("MDO") filed June 9, 1995, this court granted plaintiffs' motion for a preliminary injunction after finding that plaintiffs had demonstrated a likelihood of success on the merits of their copyright infringement claim and that they were entitled to the presumption of irreparable injury which normally flows from a showing of a prima facie case of such infringement.[1] Rather than grant plaintiffs the broad injunction they sought; i.e., one which would have precluded the State from enforcing §§ 341 and 342 of the Standardized Testing Act ("STA") against them pending the outcome of this litigation, however, the court fashioned a conditional injunction intended to maintain the status quo as well as to account for the competing public interests

served by each of the parties to this action. The Graduate Record Examinations Board ("GRE"), Test of English as a Foreign Language Policy Council ("TOEFL"), and the Educational Testing Service ("ETS") now move for partial reconsideration of the court's MDO, specifically the form of the preliminary relief which the court granted to them. In this regard, GRE, TOEFL and ETS request that the court either issue an injunction completely barring the enforcement of § 342 against them or, in the alternative, that the court modify its MDO in the manner set forth in their memorandum of law.

Submitted in conjunction with plaintiffs' motion was the College Entrance Examination Board's ("CEEB") "Statement of the College Board Concerning Compliance with the Court's June 9, 1995 Memorandum and Order ("Statement")."[2] Pursuant to this Statement, CEEB proposes that, in compliance with the court's MDO, during the 1995–1996 test year, CEEB would disclose three SAT I forms administered in New York during the 1995–1996 test year and one traditional SAT form which had been administered in New York at low-volume administrations in the past. *See* Statement at 2. CEEB explains that

> [a]lthough this test form [the traditional SAT form] will not be administered in New York in 1995–96, § 342(4) of the Testing Act does permit test forms administered at low-volume administrations to be filed with the New York Commissioner of Education on a delayed basis. Disclosure of this form, therefore, will be disclosure of a form "used to administer the SAT in New York in accordance with § 342 of the Act" and will comply with the terms of this Court's Memorandum and Order.

*See id.*

Defendants ("the State") oppose plaintiffs' motion and object to CEEB's Statement

---

1. For purposes of this discussion, the court's reference to "plaintiffs" does not include the Graduate Management Admissions Council, Inc., which although a plaintiff to this action did not join in the other plaintiffs' motion for a preliminary injunction.

2. CEEB did not join in the other plaintiffs' motion for reconsideration of this court's MDO.

which, the State argues, does not comport with this court's MDO. The court will discuss each of these issues *seriatim.*

## DISCUSSION

### I.  CEEB's Statement

Although CEEB does not join in the other plaintiffs' motion for reconsideration, it filed its Statement with that motion. At the time that the court received this Statement, it was not readily apparent why CEEB had filed the same. The court's MDO did not require such action; nor did CEEB submit any explanation with its Statement. It was only after the State submitted its memorandum in opposition to plaintiffs' motion for reconsideration, in which it stated that in its view CEEB's Statement did not constitute compliance with the court's MDO, that CEEB filed a memorandum in which it provided the court with an explanation for its actions.

■ According to CEEB, it filed its Statement so "[t]hat any objection by the State could be resolved before the June 30 deadline for printing the 1995–96 SAT schedule announcements." *See* CEEB's Memorandum at 1. Moreover, CEEB asserts that because the State took no action until it filed its papers in opposition to plaintiffs' motion for reconsideration on July 13, 1995, the State's "[a]rgument [in opposition to the Statement] comes too late and should be barred under principles of laches. The Board now has published its 1995–96 test schedule, relying on the State's apparent lack of opposition." *See id.* at 3. In response to this laches argument, the State contends that it orally notified CEEB's counsel on or about June 27, 1995, of its opposition to CEEB's Statement. *See* State's Letter to the Court dated July 17, 1995, at 1.[3]

The court notes that given the form of CEEB's Statement and the manner in which it was filed, there was no obligation on anyone's part, either the State or the Court, to respond to its submission. As stated above, it was not readily apparent why CEEB filed this Statement. If CEEB had accompanied its Statement with even a cover letter indicating that if the State had an objection it should notify CEEB immediately so that the court would have an opportunity to rule on the proposal contained therein prior to the June 30, 1995, deadline, then arguably the State would have been under some obligation to respond within a reasonable time. In the absence of such an explanation, however, the State cannot be faulted for its inaction. Moreover, given the fact that the Statement was filed with plaintiffs' motion for reconsideration, it was reasonable for the State to address the issues raised therein at the same time it responded to plaintiffs' motion for reconsideration. Accordingly, the court holds that the principle of laches does not bar the State from raising objections to CEEB's proposal for compliance with this court's MDO.

■ To support its contention that its Statement complies with the court's requirement that "[t]he College Entrance Examination Board shall disclose up to four SAT test forms used to administer the SAT in New York in accordance with the requirements of § 342 of the SAT," CEEB relies upon § 342(4) of the SAT which permits test forms administered at low-volume administrations to be filed with the Commissioner of Education on a delayed basis. There is no question that § 342(4) allows for delayed disclosure of test forms used in low-volume administrations. Nevertheless, it is clear from the context of the court's MDO that disclosure of

---

**3.** In a letter response to the State's July 17, 1995, letter, CEEB's counsel states that although she did have a conversation with the State's attorney on June 29, 1995, she believes that his recollection of what was said is incorrect. In this regard, she asserts that

> [t]hat telephone conversation, which took place on Thursday, June 29, was initiated by me. During that conversation, I explained what tests the College Board planned to disclose during the 1995–1996 testing year, and how we believed that plan was in compliance

with this Court's order. Mr. Roberts did not then advise me that the State was taking the position that the College Board's plan failed to comply with the June 9 Order, but rather that, while he had some reservations about the propriety of the plan, he needed to consider the matter further and to talk to others in his office before deciding whether the State would challenge the College Board's plan.

*See* CEEB's Letter to the Court dated July 19, 1995.

such tests was not considered in fashioning the form of the preliminary injunctive relief granted to plaintiffs in this case.

First of all, although low-volume administrations were discussed by the parties at the time plaintiffs moved for a preliminary injunction, the focus of their arguments and the court's subsequent discussion was the high-volume administrations of such tests. Moreover, when read as a whole, the pertinent section of the court's MDO makes clear that its requirement that a certain number of test forms be disclosed in any particular test year relates to test forms administered in that same test year.[4] Otherwise, it would not have been necessary for the court to provide for situations in which CEEB might choose to offer less than or more than four test administrations in any given test year.

Notwithstanding what it considers to be the only plausible interpretation of its MDO, the court finds that CEEB's construction, although erroneous, was made in good faith. Therefore, in reliance upon this good faith and because CEEB has already published its 1995–1996 SAT test schedule, the court holds that during the 1995–1996 test year CEEB may comply with the court's MDO in the manner outlined in its Statement. However, during any subsequent test year until such time as the court reaches the merits of this case, CEEB shall disclose up to four SAT test forms administered in New York in that particular test year in accordance with the requirements of § 342 of the STA. The remainder of the court's MDO with respect to CEEB's disclosure remains in tact.

## II. Motion by GRE, TOEFL, and ETS for Reconsideration

GRE, TOEFL, and ETS request that the court modify the form of the injunctive relief

which the court granted to them. In particular, they assert that "[b]ecause of the specific way in which the conditions are worded, . . . , the Memorandum and Order will have the effect of preventing the GRE program from offering at least one of its national administrations in New York State during 1996–97, and very likely in later years as well." See Plaintiffs' Memorandum of Law at 1. Therefore, they ask the court either to grant them an unconditional injunction or, in the alternative, to modify its MDO to solve what they perceive to be an "unintended problem" for the GRE program. In addition, plaintiffs request that the court add a provision to its MDO that would provide a safety valve in the event of changed circumstances in the future. See id. at 2.

The State has no objection to plaintiffs' request that the court add a safety valve provision to its MDO, although it notes that either plaintiffs or defendants could seek such relief even if it were not set out in the order. See State's Memorandum of Law at 5. On the other hand, the State opposes plaintiffs' request for a modification of the court's MDO which would alter the disclosure required of GRE.

■ Plaintiffs' primary argument in support of their motion is directed at the court's definition of the status quo in terms of the specific numerical level of disclosure in the 1994–95 stipulation which the parties entered into and filed with the court. Plaintiffs offer three reasons why this definition is incorrect. First, they argue that "[t]o the extent the Court wishes to preserve the status quo as defined in the 1994–95 stipulation, the relevant feature of the stipulation is this: it enabled plaintiffs to restore to New York

---

4. The pertinent section of the court's MDO provides as follows:

[d]uring the 1995–1996 test year, and for each test year thereafter until such time as the court reaches the merits of this case, the College Entrance Examination Board **shall disclose up to four SAT test forms used to administer the SAT in New York in accordance with the requirements of § 342 of the STA. If the CEEB chooses to offer less than four administrations of the SAT in New York during the 1995–1996 test year or during any test year thereafter, they shall disclose all such tests in accordance**

with the requirements of § 342 of the STA. Finally, if the College Entrance Examination Board offers more than four administrations of the SAT during the 1995–1996 test year or during any test year thereafter, they need not disclose such test forms.** With respect to any such tests, however, the registration materials for those tests shall contain a notice that those individuals who take such tests will not be entitled to receive a copy of the test form, answer key, or their answer sheets.

See MDO at 50–51 (emphasis added).

State all of the nondisclosed administrations they planned to offer in other states." *See* Plaintiffs' Memorandum of Law at 4. Moreover, they argue that the court's numerical definition does not take into account the changes in factual circumstances between the current testing year and future years. *See id.* at 4–5.

Secondly, plaintiffs argue that when a court issues an injunction in a case involving copyright infringement, " '[t]he status quo . . . sought to be preserved is the state of non-infringement.' " *See id.* at 5 (quoting *Uneeda Doll Co. v. Regent Baby Prods. Corp.,* 355 F.Supp. 438, 445 (E.D.N.Y.1972)). According to plaintiffs, this "[p]rinciple counsels entry of an injunction that protects plaintiffs' secure test forms from involuntary publication." *See id.* Finally, plaintiffs contend that "[t]he Court's overall objective in granting equitable relief should be to fashion a practical remedy that prevents irreparable injury, whether to plaintiffs or to third parties, such as students." *See id.* Thus, plaintiffs argue that "[i]f preserving the 'status quo' in the numerical sense will result in the very harm plaintiffs filed their motion to prevent—the withdrawal of test administrations from New York—that objective should give way to the larger goal of a fair result that avoids irreparable injury." *See id.*

As a solution to the problems they perceive to be inherent in the court's MDO, plaintiffs propose that the court modify its MDO to provide that

[t]he GRE Board shall disclose two copyrighted GRE General Test forms during the 1995–96 testing year, and one copyrighted GRE General Test form during the 1996–97 testing year. During subsequent years until such time as the court reaches the merits of this case, the GRE Board shall disclose at least one half of its paper-and-pencil GRE General Test administrations offered in New York, for any year in which the Board offers at least two such administrations. Provided that it has complied with these undertakings, the GRE Board shall not be subject to the require-

ments of Section 342 of the Standardized Testing Act.

*See* Plaintiffs' Proposed Order at 2.

In fashioning the preliminary injunctive relief it awarded to plaintiffs, the court not only sought to maintain the status quo but also took into account the competing public interests served by each of the parties to this action. In doing so, the court noted that it was "[i]n full agreement with the State that the STA serves laudable goals which address important public concerns about standardized testing." *See* MDO at 51–52. The court also noted, however, that

[t]he moving plaintiffs' ability to provide reliable and valid test forms and test questions to the test-taking public and the institutions which rely upon these materials as one factor to be considered in the admissions process is best served, at least at this stage of the litigation, by maintaining the current level of disclosure.

*See id.* at 52.

Based upon the parties' competing arguments at the time that plaintiffs moved for a preliminary injunction as well as those presented by this motion for reconsideration, the court continues to believe that a conditional preliminary injunction strikes the best balance between these competing public interests. Moreover, the court is not persuaded that the circumstances of this case warrant strict adherence to the principle set forth in *Uneeda Doll Co.* that "[t]he status quo . . . sought to be preserved is the state of noninfringement." *Uneeda Doll Co.,* 355 F.Supp. at 445. In *Uneeda Doll Co.,* the status quo was the state of noninfrinement. Here, to the contrary, the status quo is embodied in the stipulation the parties agreed to abide by during the 1994–1995 test year. Thus, although *Uneeda Doll Co.* states the general rule, it is inapposite to a case such as the present one in which the parties have altered the state of noninfringement by stipulating to limited disclosure.

■ Having said this, however, the court finds some merit in plaintiffs' argument with respect to GRE's future compliance with the court's MDO given its current phasing out of paper-and-pencil administrations as it makes

the transition to computerized testing. Therefore, with respect to GRE, the court hereby modifies its MDO as follows:

[d]uring the 1995–1996 test year, the Graduate Record Examinations Board shall disclose up to two copyrighted paper-and-pencil Graduate Record Examination General Test forms administered in New York in the 1995–1996 test year. During the 1996–1997 test year, the Graduate Record Examinations Board shall disclose one copyrighted paper-and-pencil Graduate Record Examination General Test form administered in New York in the 1996–1997 test year provided that the Graduate Record Examinations Board administers no more than two such tests in New York during the 1996–1997 test year. If, however, the Graduate Record Examinations Board administers more than two paper-and-pencil Graduate Record Examination General Test forms in New York in the 1996–1997 test year, it shall disclose at least one half of its paper-and-pencil Graduate Record Examination General Test forms administered in New York in the 1996–1997 test year. During the 1997–1998 test year and for each test year thereafter until such time as the court reaches the merits of this case, the Graduate Record Examinations Board shall disclose at least one half of its paper-and-pencil Graduate Record Examination General Test administrations offered in New York during any particular year, for any year in which the Graduate Record Examinations Board offers at least two such administrations in that year in accordance with the requirements of § 342 of the STA. Finally, for any tests in any given year which the Graduate Record Examinations Board is not required to disclose pursuant to this order, the registration materials for those tests shall contain a notice that those individuals who take such tests will not be entitled to receive a copy of the test forms, answer keys, or their answer sheets.

Finally, with respect to TOEFL, the court's MDO shall remain in effect without modification. Should circumstances change prior to the court reaching the merits of this action, TOEFL, as well as any of the other parties to this action, have a right to petition the court for further review and modification of its MDO.

## CONCLUSION

For the reasons stated above, the court modifies its MDO filed June 9, 1995. In this regard, the court hereby orders the following preliminary injunctive relief:

During the 1995–1996 test year, the College Entrance Examination Board shall disclose four SAT test forms, three of which shall be SAT I test forms administered in New York during the 1995–1996 test year and one of which shall be a traditional SAT test form which has been administered in New York at low-volume administrations in a year prior to the 1995–1996 test year. During the 1996–1997 test year, and for each test year thereafter until such time as the court reaches the merits of this case, the College Entrance Examination Board shall disclose up to four SAT test forms used to administer the SAT in New York in that particular test year in accordance with the requirements of § 342 of the STA. If the College Entrance Examination Board chooses to offer less than four administrations of the SAT in New York during the 1996–1997 test year or during any test year thereafter, it shall disclose all such tests in accordance with the requirements of § 342 of the STA. Finally, if the College Entrance Examination Board offers more than four administrations of the SAT in New York during the 1996–1997 test year or during any test year thereafter, it need not disclose such test forms. With respect to any such tests, however, the registration materials for those tests shall contain a notice that those individuals who take such tests will not be entitled to receive a copy of the test forms, answer keys, or their answer sheets.

Furthermore, during the 1995–1996 test year, the Graduate Record Examinations Board shall disclose up to two copyrighted paper-and-pencil Graduate Record Examination General Test forms administered in New York in the 1995–1996 test year. During the 1996–1997 test year, the Graduate Record Examinations Board shall disclose one copyrighted paper-and-pencil Graduate Record

Examination General Test form administered in New York in the 1996–1997 test year provided that the Graduate Record Examinations Board administers no more than two such tests in New York during the 1996–1997 test year. If, however, the Graduate Record Examinations Board administers more than two paper-and-pencil Graduate Record Examination General Test forms in New York in the 1996–1997 test year, it shall disclose at least one half of its paper-and-pencil Graduate Record Examination General Test forms administered in New York in the 1996–1997 test year. During the 1997–1998 test year and for each test year thereafter until such time as the court reaches the merits of this case, the Graduate Record Examinations Board shall disclose at least one half of its paper-and-pencil Graduate Record Examination General Test administrations offered in New York during any particular year, for any year in which the Graduate Record Examinations Board offers at least two such administrations in that year in accordance with the requirements of § 342 of the STA. Finally, for any tests in any given year which the Graduate Record Examinations Board is not required to disclose pursuant to this order, the registration materials for those tests shall contain a notice that those individuals who take such tests will not be entitled to receive a copy of the test forms, answer keys, or their answer sheets.

Furthermore, during the 1995–1996 test year, and for each test year thereafter until such time as the court reaches the merits of this case, the Test of English as a Foreign Language Policy Council shall disclose up to five copyrighted test forms in accordance with the requirements of § 342 of the STA. If the Test of English as a Foreign Language Policy Council chooses to offer less than five test administrations in New York during the 1995–1996 test year or during any test year thereafter, it shall disclose all such tests in accordance with the requirements of § 342. Finally, if the Test of English as a Foreign Language Policy Council decides to offer in excess of five test administrations in New York during the 1995–1996 test year or during any test year thereafter, it need not disclose such test forms. With respect to such tests, however, the registration materi-

als for those tests shall contain a notice that those individuals who take such tests will not be entitled to receive a copy of the test forms, answer keys, or their answer sheets.

**IT IS SO ORDERED.**